# United States Tax Court

162 T.C. No. 6

VALLEY PARK RANCH, LLC, REED OPPENHEIMER,
TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 12384-20.                    Filed March 28, 2024.

————

P, tax matters partner of VP, timely petitioned this Court challenging the IRS's notice of final partnership administrative adjustment. In 2016, VP donated a conservation easement and claimed a charitable contribution deduction under I.R.C. § 170(a). The easement deed provides that if the conservation restriction is terminated, the donee will receive (i) an amount determined by a court, unless otherwise provided by state or federal law, or (ii) in the event of the government's exercise of eminent domain, the respective share of the proceeds from a "qualified appraisal."

The parties filed Cross-Motions for Partial Summary Judgment as to whether the deed conveying the easement satisfies the requirements of I.R.C. § 170(h) and Treas. Reg. § 1.170A-14(g)(6)(ii). P principally contends that the deed satisfies the statute and the regulation, but in the alternative contends that the regulation is invalid under the Administrative Procedure Act, or that the deed is ambiguous.

*Held*: Following *Hewitt v. Commissioner*, 21 F.4th 1336 (11th Cir. 2021), *rev'g and remanding* T.C. Memo. 2020-89, we hold that Treas. Reg. § 1.170A-14(g)(6)(ii) is

**Served 03/28/24**

procedurally invalid under the Administrative Procedure Act and that the deed therefore need not comply with its requirements. To the extent *Oakbrook Land Holdings, LLC v. Commissioner*, 154 T.C. 180 (2020), *aff'd*, 28 F.4th 700 (6th Cir. 2022), holds otherwise, we will no longer follow it.

 *Held, further*, the easement deed satisfies the "restriction (granted in perpetuity)" requirement under I.R.C. § 170(h)(2)(C) and the "protected in perpetuity" requirement of I.R.C. § 170(h)(5).

———————

*Gabriella K. Cole*, *John W. Hackney*, *Erin R. Hines*, *Jeffrey S. Luechtefeld*, *John J. Nail*, and *Hale E. Sheppard*, for petitioner.

*Jason P. Oppenheim* and *John W. Sheffield III*, for respondent.

OPINION

 JONES, *Judge*: This case concerns a $14.8 million deduction claimed under section 170(h)[1] for the conveyance of a conservation easement (Easement) in taxable year 2016 by Valley Park Ranch, LLC (Valley Park). This case is a partnership-level proceeding under the unified partnership audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71.[2] The Internal Revenue Service (IRS) disallowed the deduction in a notice of final partnership administrative adjustment (FPAA) dated July 23, 2020. Valley Park's tax matters partner (TMP), Reed Oppenheimer (Mr. Oppenheimer), timely petitioned this Court for review of the adjustment pursuant to section 6226(a)(1).

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulatory references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, Rule references are to the Tax Court Rules of Practice and Procedure, and paragraph references are to the paragraphs of the deed of conservation easement at issue.

[2] Before its repeal, TEFRA governed the audit and litigation procedures for many partnerships (including entities that elected to be treated as partnerships).

Before the Court are the parties' respective Motions for Partial Summary Judgment on the issues of whether the deed conveying the Easement is in accord with Treasury Regulation § 1.170A-14(g)(6)(ii), whether that regulatory provision is valid under the Administrative Procedure Act (APA), and if not, whether the deed satisfies the statute. For the reasons elaborated upon below, we find that the regulation is invalid under the APA. We also find that the deed satisfies certain statutory requirements. Consequently, we will deny respondent's Motion and grant Mr. Oppenheimer's.

*Background*

The following background is drawn from the parties' pleadings, motion papers, and the exhibits attached therein. This background is recited only to resolve the present Motions and not as findings of fact in this case. *See* Rule 1(b); Fed. R. Civ. P. 52(a)(3); *see also Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

I.      *Valley Park and the Deed of Conservation Easement*

Valley Park is a limited liability company organized under the laws of Oklahoma. It is treated as a partnership for federal income tax purposes. When Mr. Oppenheimer filed the Petition, Valley Park's principal place of business was in Tulsa, Oklahoma.[3]

On December 22, 2016, Valley Park conveyed a conservation easement over approximately 45.76 acres of land (Property) in Rogers County, Oklahoma, to Compatible Lands Foundation (CLF). The deed of conservation easement was recorded with the Rogers County Clerk on the same day.

The conveyance paragraph of the deed provides that Valley Park "grants and conveys to [CLF] a conservation easement in perpetuity over the Property of the nature and character and to the extent hereinafter set forth."

The deed recites the conservation purpose of the easement in paragraph 1 as follows:

---

[3] Absent stipulation to the contrary, and as discussed further below, appeal of this case would lie in the U.S. Court of Appeals for the Tenth Circuit. *See* § 7482(b)(1)(E).

It is the purpose of this Easement to assure that the Property will be retained forever predominantly in its natural, scenic, and open space condition and to prevent any use of the Property that will significantly impair or interfere with the conservation values of the Property. [Valley Park] intends that this Easement will confine the use of the Property to such activities, including, without limitation, those involving traditional ranching or other agricultural and agroecology uses that are consistent with the purpose of this Easement. The duration of this Easement shall be in perpetuity.

In paragraph 2, the deed provides:

To accomplish the purpose of this Easement the following rights are perpetually conveyed to [CLF] by this Easement:

(a) To preserve and protect the conservation values of the Property;

(b) To enter upon the Property at reasonable times in order to monitor [Valley Park's] compliance with and otherwise to enforce the terms of this Easement, provided that such entry shall be upon prior reasonable notice to [Valley Park], and [CLF] shall not unreasonably interfere with [Valley Park's] use and quiet enjoyment of the Property; and

(c) To prevent any activity on or use of the Property that is inconsistent with the purpose of this Easement and to require the restoration of such areas or features of the Property that may be damaged by any inconsistent activity or use, pursuant to paragraph 6.

At paragraph 4, the deed sets forth a nonexhaustive list of activities and uses of the Property that are "perpetually prohibited," including "[a]ny activity on or use of the Property inconsistent with the purpose of [the] Easement."

The deed also acknowledges that future circumstances may arise that render the conservation purpose of the Easement obsolete or impossible to accomplish. Under such circumstances, the deed provides in paragraph 12:

[The Easement] can only be terminated or extinguished, whether in whole or in part, by judicial proceedings in a court of competent jurisdiction, and the amount of the proceeds to which [CLF] shall be entitled, after the satisfaction of prior claims, from any sale, exchange, or involuntary conversion of all or any portion of the Property subsequent to such termination or extinguishment, shall be determined by the court, unless otherwise provided by State or Federal law at the time.

Relatedly, the deed also contemplates the prospect of extinguishment via condemnation providing in paragraph 13:

If the Easement is taken, in whole or in part, by exercise of the power of eminent domain, [Valley Park] and [CLF] shall be entitled to compensation, by the entity declaring power of eminent domain, in accordance with applicable law, policy and procedures. Respective portions shall be determined by a Qualified Appraisal meeting standards as established by the United States Department of the Treasury.

II.   *Valley Park's Return and IRS Examination*

Valley Park filed Form 1065, U.S. Return of Partnership Income (return), for its short taxable year 2016, which began on December 22, 2016, and ended on December 31, 2016. It claimed therein a $14.8 million deduction under section 170(h) for the conveyance of the Easement. Valley Park included with the return Form 8283, Noncash Charitable Contributions, which states that Valley Park acquired the Property in January 1998 and that its cost or adjusted basis in the Property was $91,610.

Valley Park's return was selected for examination, which culminated in the instant FPAA dated July 23, 2020.[4] Therein, the IRS

---

[4] Shortly before the issuance of the FPAA, Valley Park and CLF executed an amendment to the deed's extinguishment and condemnation provisions (i.e., paragraphs 12 and 13, respectively) on June 4, 2020. The amendment was recorded with the Rogers County Clerk on July 21, 2020. In pertinent part, the amendment provided that the deed "should be amended" such that in the event of the easement's extinguishment (including due to condemnation), CLF was entitled to:

disallowed the claimed $14.8 million deduction because Valley Park did not establish that all of the requirements of section 170(h) and the corresponding Treasury regulations for deducting a noncash charitable contribution were satisfied.[5] On October 19, 2020, Mr. Oppenheimer timely petitioned this Court—in his capacity as Valley Park's TMP—for review of the IRS's adjustments as reflected in the FPAA.

III.  *The Parties' Arguments*

In the Motion for Partial Summary Judgment, respondent principally argues that the IRS's determination disallowing the $14.8 million deduction should be sustained because the conservation purpose of the Easement is not "protected in perpetuity" as required by section 170(h)(5)(A) and, specifically, by operation of Treasury Regulation § 1.170A-14(g)(6)(ii).

In his Motion for Partial Summary Judgment, Mr. Oppenheimer's principal argument is that the deed satisfies the "protected in

---

[A] portion of the proceeds of such sale or exchange at least equal to the proportionate value that the perpetual conservation easement granted hereunder bears to the value of the Property as a whole on the date hereof unless state law provides that [Valley Park] is entitled to the full proceeds for such judicial conversion without regard to the terms of this Easement. Such portion of the proceeds allocable to [CLF] shall be used by [CLF] in a manner consistent with the Purpose of this Easement as set forth herein.

Mr. Oppenheimer does not assert that the amendment to the deed brings the conveyance into compliance with Treasury Regulation § 1.170A-14(g)(6)(ii). Rather, he argues that it reflects the parties' intent to comply with the law. Regardless, we find the amendment to the deed—which was executed and recorded more than three years after the end of the taxable year at issue—immaterial for purposes of resolving the present Motions. All of the requirements of section 170(h) must be satisfied at the time of the easement's grant. *See Mitchell v. Commissioner*, 138 T.C. 324, 332 (2012), *supplemented by* T.C. Memo. 2013-204, *aff'd*, 775 F.3d 1243 (10th Cir. 2015); *see also Palmolive Bldg. Invs., LLC v. Commissioner*, 149 T.C. 380, 405 (2017) (rejecting taxpayer argument that a saving clause cured a deed's noncompliance with Treasury Regulation § 1.170A-14(g)(6)(ii) reasoning in part that "the requirements of section 170 must be satisfied *at the time of the gift*" (emphasis added)). We do not address the amendment any further.

[5] The IRS also made penalty determinations against Valley Park at the partnership level. These penalties were determined in the alternative under section 6662(h), providing a penalty equal to 40% of any underpayment of tax; section 6662A, providing a penalty equal to 30% of any underpayment; and section 6662(c), (d), or (e), providing a penalty equal to 20% of any underpayment. The propriety of these penalty determinations is not at issue in the present Motions.

perpetuity" requirement of section 170(h)(5)(A) and Treasury Regulation § 1.170A-14(g)(6)(ii). In his view, the text of the deed complies on its face with the regulation through "explicit incorporation." Nonetheless, he maintains that Treasury Regulation § 1.170A-14(g)(6)(ii) is procedurally invalid under the APA and that the deed therefore need not comply with its requirements.[6]

We ordered the parties to further address whether the deed satisfies the statutory requirements of section 170(h)(2) and (5)(A),

---

[6] The dissent suggests we ought to address "whether the deed complies [with Treasury Regulation § 1.170A-14(g)(6)(ii)] or a trial is needed because the deed is ambiguous" before considering the validity of the regulation. *See* dissenting op. p. 35. But upon review of the deed, we are not optimistic that Valley Park would prevail under the regulation. In relevant part, paragraph 12 of the deed provides that, upon termination or extinguishment of the Easement by a court, "the amount of the proceeds to which [CLF] shall be entitled . . . shall be determined by the court, unless otherwise provided by State or Federal law at the time." First, this paragraph reads much like a saving clause, which our Court has held does not comply with the regulation. *See Coal Prop. Holdings, LLC v. Commissioner*, 153 T.C. 126, 140–45 (2019); *Palmolive Bldg. Invs., LLC*, 149 T.C. at 404–05.

Second, the deed's reference to "Federal law" does nothing to bind an extinguishing court in terms of allocating the proceeds following a disposition of the property. Notwithstanding the vague reference to "[f]ederal law," the requirements of the regulation are solely for the purpose of a taxpayer's claiming a tax deduction under section 170(h) for the charitable conveyance of a conservation easement. Its applicability is confined to this narrow purpose, and the regulation itself does not purport to require an extinguishing court to allocate proceeds in any particular manner.

The dissent also takes up Mr. Oppenheimer's argument that the deed is ambiguous. *See* dissenting op. pp. 34–35. In making this argument, Mr. Oppenheimer did not clearly articulate where the purported ambiguity lies beyond his conclusory assertion that the deed is ambiguous and that it could be read multiple ways. We have examined the deed and concluded that any potential ambiguities—which, for purposes of this discussion, we will assume are ambiguities as a matter of Oklahoma law—are moot. Accordingly, we find that Valley Park's deduction would fail to satisfy Treasury Regulation § 1.170A-14(g)(6)(ii) regardless of how such purported ambiguities are construed.

Further rendering any potential ambiguities moot is the effect of the exempting clause's reference to "at the time." In context, "at the time" unambiguously refers to the time of the easement's hypothetical extinguishment. Treasury Regulation § 1.170A-14(g)(6)(ii) as in effect at the time of the easement's hypothetical extinguishment (during some point in perpetuity) is irrelevant; in fact, it may not even exist at such a time. The propriety of the deduction must be determined with respect to Treasury Regulation § 1.170A-14(g)(6)(ii) as it was in effect for taxable year 2016 (i.e., the year of the conveyance and for which Valley Park claimed the deduction).

irrespective of Treasury Regulation § 1.170A-14(g)(6)(ii). Mr. Oppenheimer and respondent timely filed responses to our Order.

IV.    *Jurisprudential Development*

In an Opinion reviewed pursuant to section 7460(b), a majority of this Court upheld the substantive and procedural validity of Treasury Regulation § 1.170A-14(g)(6)(ii). *Oakbrook Land Holdings, LLC v. Commissioner* (*Oakbrook I*), 154 T.C. 180 (2020), *aff'd*, *Oakbrook Land Holdings, LLC v. Commissioner* (*Oakbrook II*), 28 F.4th 700 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 626 (2023).[7]

After our decision in *Oakbrook I*, a unanimous panel of the U.S. Court of Appeals for the Eleventh Circuit reversed this Court's reliance on that decision. The Eleventh Circuit held that "the Commissioner's interpretation of § 1.170A-14(g)(6)(ii), to disallow the subtraction of the value of post-donation improvements . . . , is arbitrary and capricious and therefore invalid under the APA's procedural requirements." *Hewitt v. Commissioner*, 21 F.4th 1336, 1353 (11th Cir. 2021), *rev'g and remanding* T.C. Memo. 2020-89.[8]

In contrast, a divided panel of the U.S. Court of Appeals for the Sixth Circuit affirmed this Court's holdings in *Oakbrook I* and rejected the reasoning of the Eleventh Circuit. *Oakbrook II*, 28 F.4th at 717. In a concurring opinion, Judge Guy stated that he would find the regulation invalid for the reasons set forth by the Eleventh Circuit in *Hewitt* but would have nonetheless affirmed our decision by applying the statute to the deed. *Id.* at 722 (Guy, J., concurring in the judgment only). Oakbrook Land Holdings sought Supreme Court review of the Sixth Circuit's majority opinion. Notably, in briefing that opposed certiorari to the Supreme Court, the Solicitor General stated that the statute answered the question, observing that *Oakbrook* "would be a poor vehicle in which to address the question [of the regulation's validity] because the statute itself compels disallowance of petitioners' deduction, rendering the validity of the challenged regulation

---

[7] In separate opinions, Judges Toro and Holmes reflect their disagreement with the majority opinion's conclusion regarding the procedural validity of Treasury Regulation § 1.170A-14(g)(6)(ii). *See Oakbrook I*, 154 T.C. at 216–30 (Toro, J., concurring in the result); *id.* at 235–53 (Holmes, J., dissenting).

[8] The Eleventh Circuit subsequently confirmed that *Hewitt* invalidated Treasury Regulation § 1.170A-14(g)(6)(ii). *Glade Creek Partner, LLC v. Commissioner*, No. 21-11251, 2022 WL 3582113, at *3 (11th Cir. Aug. 22, 2022), *aff'g in part, vacating in part and remanding* T.C. Memo. 2020-148.

academic." Brief for Respondent at 13, *Oakbrook Land Holdings, LLC v. Commissioner*, No. 22-323 (U.S. Dec. 7, 2022). Certiorari was denied. *Oakbrook Land Holdings, LLC v. Commissioner*, 143 S. Ct. 626.

To effect "efficient and harmonious judicial administration," this Court will follow a court of appeals decision that is "squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone." *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). Appeal of this case would lie in the U.S. Court of Appeals for the Tenth Circuit, absent written stipulation to the contrary. § 7482(b)(1)(E). Accordingly, in this case we are not bound to follow either the decision of the Sixth Circuit in *Oakbrook II* (upholding the regulation) or that of the Eleventh Circuit in *Hewitt* (invalidating the regulation). *See Golsen*, 54 T.C. at 757. As of this writing, the Tenth Circuit has not taken a position on the validity of Treasury Regulation § 1.170A-14(g)(6)(ii).

In light of the reversal by the Eleventh Circuit, we reconsider our holding in *Oakbrook I. See Lawrence v. Commissioner*, 27 T.C. 713, 716–17 (1957) (observing that when one of our decisions is reversed by an appellate court, we must "thoroughly reconsider the problem in the light of the reasoning of the reversing appellate court and, if convinced thereby, . . . follow the higher court"), *rev'd on other grounds*, 258 F.2d 562 (9th Cir. 1958); *see also, e.g.*, *Tice v. Commissioner*, No. 24983-15, 160 T.C., slip op. at 10–11 (Apr. 10, 2023); *Peat Oil & Gas Assocs. v. Commissioner*, 100 T.C. 271, 274 (1993), *aff'd per curiam sub nom. Ferguson v. Commissioner*, 29 F.3d 98 (2d Cir. 1994).

Where we have been reversed by a single appellate court, we have at times declined to change our position. *See, e.g.*, *Hall v. Commissioner*, 135 T.C. 374, 382 (2010) (sticking with our interpretation of section 6015(f) despite reversal by the U.S. Court of Appeals for the Seventh Circuit in *Lantz v. Commissioner*, 607 F.3d 479 (7th Cir. 2010), *rev'g* 132 T.C. 131 (2009)); *Metro Leasing & Dev. Corp. v. Commissioner*, 119 T.C. 8, 14–17, 23 (2002) (declining to follow the U.S. Court of Appeals for the Fifth Circuit's holding and rationale regarding the calculation of accumulated taxable income under section 535(b)(1) in *J.H. Rutter Rex Mfg. Co. v. Commissioner*, 853 F.2d 1275 (5th Cir. 1988), *rev'g on this point* T.C. Memo. 1987-296), *supplementing* T.C. Memo. 2001-119; *Lychuk v. Commissioner*, 116 T.C. 374, 408 (2001) (adhering to our view on the rules of capitalization after reversal by the U.S. Court of Appeals for the Third Circuit in *PNC Bancorp, Inc. v. Commissioner*, 212 F.3d 822 (3d Cir. 2000), *rev'g* 110 T.C. 349 (1998)).

On other occasions, we have adopted the reasoning of the reversing court. *See, e.g.*, *Graev v. Commissioner*, 149 T.C. 485 (2017) (adjusting our interpretation of section 6751(b)(1) to follow the U.S. Court of Appeals for the Second Circuit after reversal in *Chai v. Commissioner*, 851 F.3d 190 (2d Cir. 2017), *aff'g in part, rev'g in part* T.C. Memo. 2015-42), *supplementing and overruling in part* 147 T.C. 460 (2016); *Square D. Co. & Subs. v. Commissioner*, 118 T.C. 299, 304 (2002) (changing our position that Treasury Regulation § 1.267(a)-3 was invalid following the Third Circuit's reversal in *Tate & Lyle, Inc. v. Commissioner*, 87 F.3d 99 (3d Cir. 1996), *rev'g and remanding* 103 T.C. 656 (1994)), *aff'd*, 438 F.3d 739 (7th Cir. 2006).

We have also waited for more jurisprudential development. With respect to the validity of the regulations under section 163, the U.S. Court of Appeals for the Eighth Circuit's position was established in 1995, *see Miller v. United States*, 65 F.3d 687, 691 (8th Cir. 1995), before we took a contrary position in 1996, *see Redlark v. Commissioner*, 106 T.C. 31, 47 (1996), *rev'd*, 141 F.3d 936 (9th Cir. 1998). When we ultimately changed our position in *Robinson v. Commissioner*, 119 T.C. 44 (2002) (holding that we would no longer follow *Redlark*), five courts of appeals had taken a position on the issue, *see Kikalos v. Commissioner*, 190 F.3d 791, 799 (7th Cir. 1999), *rev'g* T.C. Memo. 1998-92; *McDonnell v. United States*, 180 F.3d 721, 723 (6th Cir. 1999); *Allen v. United States*, 173 F.3d 533, 538 (4th Cir. 1999); *Redlark v. Commissioner*, 141 F.3d at 942; *Miller*, 65 F.3d at 691.

In this instance, we recognize that the Sixth Circuit affirmed *Oakbrook I* after the Eleventh Circuit's reversal in *Hewitt*. But we agree with Judge Guy and the Solicitor General that resolution of *Oakbrook* did not require reaching the validity of the regulation. *See Oakbrook II*, 28 F.4th at 729 (Guy, J., concurring in the judgment only); Brief for Respondent at 21–22, *Oakbrook Land Holdings, LLC v. Commissioner*, No. 22-323.[9] Accordingly, after careful consideration of the Eleventh

---

[9] The dissent argues that the Sixth Circuit's affirmance of *Oakbrook I* after the Eleventh Circuit's reversal in *Hewitt* somehow undermines the reversal. *See* dissenting op. pp. 36–37. As we have noted, when one of our decisions is reversed we must "thoroughly reconsider the problem in the light of the reasoning of the reversing appellate court and, if convinced thereby, . . . follow the higher court." *Lawrence*, 27 T.C. at 716–17; *see supra* p. 9. We are not aware of any suggestion that chronology—as between reversal and affirmance—dilutes our duty to undertake thorough reconsideration.

Circuit's reasoning in *Hewitt*, we find it appropriate to change our position.

We disagree with the dissenting opinion's argument that our conclusion fails to follow stare decisis principles and will result in instability in the law. *See* dissenting op. pp. 37–39. Respectfully, we must revisit our decision in *Oakbrook* precisely because the law is already unstable. *See supra* pp. 8–9; *see also Analog Devices, Inc. & Subs. v. Commissioner*, 147 T.C. 429, 443 (2016) (noting the requirement to revisit our analysis in light of a reversal and the parties' arguments). To be sure, "[t]he doctrine of stare decisis is important to this Court, and we are mindful of its role in [relevant cases]." *Analog Devices*, 147 T.C. at 443. But where, as here, we are faced with "issues on which a Court of Appeals has reversed our prior decision," *see id.*, we are obligated to thoroughly reconsider our position, *Lawrence*, 27 T.C. at 716–17; *see supra* p. 9.

Moreover, *Oakbrook I*—decided just four years ago—is not entrenched precedent. To our knowledge, the Sixth and Eleventh Circuits are the only courts of appeals to speak on the issues we consider today. Thus, "the important goals of stare decisis to ensure the 'evenhanded, predictable, and consistent development of legal principles' and to 'foster[] reliance on judicial decisions' . . . are not served by our continued adherence" to *Oakbrook I. Analog Devices*, 147 T.C. at 444 (alteration in original) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). In consideration of the split between the Sixth and Eleventh Circuits, this is the right time to "gracefully and good naturedly surrender[] former views to a better considered position." *McGrath v. Kristensen*, 340 U.S. 162, 178 (1950) (Jackson, J., concurring).

## *Discussion*

For the reasons discussed below, we hold that Treasury Regulation § 1.170A-14(g)(6)(ii) is procedurally invalid under the APA and that the deed therefore need not comply with its requirements. *See Hewitt v. Commissioner*, 21 F.4th at 1348. To the extent *Oakbrook I*

---

Furthermore, the Sixth Circuit was not unanimous in its conclusion that the proceeds regulation is valid. Judge Guy stated that he would find the regulation invalid for the reasons set forth by the Eleventh Circuit in *Hewitt*. *Oakbrook II*, 28 F.4th at 722 (Guy, J., concurring in the judgment only); *see supra* p. 8. Thus, four out of six members of the appellate courts who have analyzed the issue have concluded that the regulation is procedurally invalid.

holds otherwise, we will no longer follow it. We further hold that the easement deed satisfies certain requirements set forth in section 170(h)(2)(C) and (5)(A).

I.      *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *See Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We may grant summary judgment regarding an issue when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(a)(1) and (2); *Sundstrand Corp.*, 98 T.C. at 520.

Upon review of the parties' pleadings, motion papers, and the exhibits attached thereto, we conclude that judgment on the issue of the procedural validity of Treasury Regulation § 1.170A-14(g)(6)(ii) may be rendered as a matter of law. We also conclude that judgment on the issues of whether the deed satisfies the "granted in perpetuity" requirement of section 170(h)(2)(C) and the "protected in perpetuity" requirement of section 170(h)(5)(A) may be rendered as a matter of law.

II.     *Procedural Validity of the Regulation*

A.      *Applicable Framework for Judicial Review*

Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Our review standard is "narrow," and we will not substitute our judgment for that of the agency. *Zzyym v. Pompeo*, 958 F.3d 1014, 1022 (10th Cir. 2020) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). However, in employing this deferential standard of review, we must determine whether the decision was based on consideration of the relevant factors and whether there was a clear error of judgment. *W. Watersheds Project v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1273 (10th Cir. 2013) (citing *State of N.M. ex rel. Richardson v. BLM*, 565 F.3d 683, 704–05 (10th Cir. 2009)). Furthermore, "we may not supply a reasoned basis for the agency's action that the agency itself has not given," although we will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (first citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); and then quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

The APA "prescribes a three-step procedure for so-called 'notice-and-comment rulemaking.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015); *accord* 5 U.S.C. § 553. First, an agency "must issue a '[g]eneral notice of proposed rule making,' ordinarily by publication in the Federal Register." *Mortg. Bankers Ass'n*, 575 U.S. at 96 (alteration in original) (quoting 5 U.S.C. § 553(b)). Second, "if 'notice [is] required,' the agency must 'give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments,'" and the agency "must consider and respond to significant comments received during the period for public comment." *Id.* (alteration in original) (quoting 5 U.S.C. § 553(c)).

Third, in promulgating the final rule, the agency must include in its text a "concise general statement of [the rule's] basis and purpose." *Gallegos v. Lyng*, 891 F.2d 788, 795 (10th Cir. 1989) (alteration in original) (quoting 5 U.S.C. § 553(c)). As the Supreme Court has explained, "[r]ules issued through the notice-and-comment process are often referred to as 'legislative rules' because they have the 'force and effect of law.'" *Mortg. Bankers Ass'n*, 575 U.S. at 96 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03 (1979)). Thus, basis and purpose statements must contain sufficient information to allow a court to exercise judicial review, *see, e.g.*, *Kennecott Copper Corp. v. EPA*, 612 F.2d 1232, 1236 (10th Cir. 1979), as "[o]ne of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions," *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016); *see also United States v. Frontier Airlines, Inc.*, 563 F.2d 1008, 1013 (10th Cir. 1977) ("The Basis and Purpose Statement is a very significant portion of a regulation when an issue arises as to its application and scope.").

Further, an agency must respond to comments "that can be thought to challenge a fundamental premise" underlying the proposed agency decision. *MCI WorldCom, Inc. v. FCC*, 209 F.3d 760, 765 (D.C. Cir. 2000). Thus, an agency should respond to significant points and consider vital relevant comments. *W. Coal Traffic League v. United States*, 677 F.2d 915, 927 (D.C. Cir. 1982); *see also Balt. Gas & Elec. Co. v. United States*, 817 F.2d 108, 116 (D.C. Cir. 1987) (noting that under the arbitrary and capricious standard of review, an agency is "required to respond to significant comments that cast doubt on the reasonableness of the rule the agency adopts").

B. *Statutory and Regulatory Framework: Treasury's Rulemaking Process*

Section 170(a)(1) generally permits a deduction for charitable contributions made during the taxable year. However, section 170(f)(3)(A) denies the deduction for contributions of property that consist of less than the taxpayer's entire interest in such property. The denial of the deduction for charitable contributions of partial interests in property does not, however, apply to "qualified conservation contribution[s]." *See* § 170(f)(3)(B)(iii).

A "qualified conservation contribution" is defined under section 170(h)(1) as a contribution (1) "of a qualified real property interest," (2) "to a qualified organization," and (3) "exclusively for conservation purposes." Under section 170(h)(2)(C), a "qualified real property interest" includes "a restriction (granted in perpetuity) on the use which may be made of the real property." Moreover, section 170(h)(5)(A) provides that a contribution shall not be treated as "exclusively for conservation purposes," *see* § 170(h)(1)(C), unless the conservation purpose of the contribution is "protected in perpetuity." The statute, however, does not define the term "protected in perpetuity" nor elaborate on the requirement. *Mitchell v. Commissioner*, 775 F.3d at 1247.

To the extent a taxpayer claims a deduction for the charitable contribution of a conservation easement under section 170(h), the Commissioner's position is that the contribution must also satisfy the relevant regulatory requirements promulgated pursuant to section 170(h).

On May 23, 1983, the Department of the Treasury (Treasury) and the IRS issued a notice of proposed rulemaking with "proposed regulations relating to contributions of partial interests in property for conservation purposes." Prop. Treas. Reg. § 1.170A-13, 48 Fed. Reg. 22,940, 22,940 (May 23, 1983). In response to the notice, Treasury received more than 700 pages of comments during the comment period. *See Oakbrook I*, 154 T.C. at 186. A public hearing on the proposed amendments to the regulations was held on September 15, 1983. *Id.* at 188.

On January 14, 1986, Treasury issued final regulations with revisions, including the regulation at issue in this case—Treasury Regulation § 1.170A-14(g)(6)(ii)—concerning requirements in

contemplation of an easement's extinguishment by judicial proceedings. *See* T.D. 8069, 1986-1 C.B. 89; *see also Oakbrook I,* 154 T.C. at 188.

Treasury Regulation § 1.170A-14(g)(6), titled "Extinguishment," provides:[10]

> (i) In general. If a subsequent unexpected change in the conditions surrounding the property that is the subject of a donation under this paragraph can make impossible or impractical the continued use of the property for conservation purposes, the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding and all of the donee's proceeds (determined under paragraph (g)(6)(ii) of this section) from a subsequent sale or exchange of the property are used by the donee organization in a manner consistent with the conservation purposes of the original contribution.
>
> (ii) Proceeds. In case of a donation made after February 13, 1986, for a deduction to be allowed under this section, at the time of the gift the donor must agree that the donation of the perpetual conservation restriction gives rise to a property right, immediately vested in the donee organization, with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift, bears to the value of the property as a whole at that time. . . . For purposes of this paragraph (g)(6)(ii), that proportionate value of the donee's property rights shall remain constant. Accordingly, when a change in conditions give rise to the extinguishment of a perpetual conservation restriction under paragraph (g)(6)(i) of this section, the donee organization, on a subsequent sale, exchange, or involuntary conversion of the subject property, must be entitled to a portion of the proceeds at least equal to that proportionate value of the perpetual conservation restriction, unless state law provides that the donor is entitled to the full proceeds from

---

[10] Going forward, we generally refer to Treasury Regulation § 1.170A-14(g)(6) as the "extinguishment provision" and to paragraph (g)(6)(ii) as the "proceeds regulation."

> the conversion without regard to the terms of the prior
> perpetual conservation restriction.[11]

The Treasury Decision spanned roughly 12 pages, of which approximately 10 contained the actual text of the regulations, leaving just over 2 pages for Treasury's responses to comments and other administrative matters. *See Hewitt v. Commissioner*, 21 F.4th at 1348; *see also* T.D. 8069.

C.  *Application of Analytical Framework to Treasury's Rulemaking Process for Treasury Regulation § 1.170A-14(g)(6)(ii)*

Relying upon *Hewitt v. Commissioner*, 21 F.4th at 1339 (holding the IRS's "interpretation of [Treasury Regulation] § 1.170A-14(g)(6)(ii) to be invalid under the APA"), Mr. Oppenheimer contends that the proceeds regulation is procedurally invalid under the APA. Specifically, Mr. Oppenheimer contends that the administrative record demonstrates that comments raising concerns with Treasury Regulation § 1.170A-14(g)(6)(ii) were filed during the rulemaking process, that those comments required a response from Treasury, and that Treasury failed to adequately respond to those significant comments in the final regulation's "basis and purpose" statement, in violation of the APA's procedural requirements. He therefore claims that the regulation is inapplicable to the conveyance at issue.[12] We agree.

Comments and concerns regarding the extinguishment provision, including how to treat postdonation improvements, were submitted to Treasury during the comment period. *See, e.g.*, *Hewitt v. Commissioner*, 21 F.4th at 1351. Turning to the most detailed comment, the New York Landmarks Conservancy (NYLC) submitted a comment letter urging

---

[11] Mr. Oppenheimer does not argue that the state law exemption applies.

[12] As best we understand Mr. Oppenheimer's motion papers, he is challenging only the procedural validity of Treasury Regulation § 1.170A-14(g)(6)(ii). Nonetheless, we acknowledge his passing reference to the regulation's purported substantive invalidity under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). However, this reference was raised for the first time in his response to our Order, *see* Pet'r's Resp. to Order (No. 35); Order (No. 28), and is beyond the scope of the briefing requested through that Order. *Oakbrook I* also held that Treasury Regulation § 1.170A-14(g)(6) was substantively valid under *Chevron. See Oakbrook I*, 154 T.C. at 195–200. The Eleventh Circuit's opinion in *Hewitt* did not reach the regulation's substantive validity under *Chevron. See Hewitt v. Commissioner*, 21 F.4th at 1339 n.1. Consequently, Mr. Oppenheimer's passing reference to the regulation's purported substantive invalidity does not alter our disposition of the Motions.

Treasury to delete the proposed proceeds regulation because it contained pervasive "problems of policy and practical application." *Id.* at 1345. NYLC stated that while Congress enacted the statute "to encourage the protection of [the] . . . environment through the donation of conservation restrictions," the proposed regulation "would thwart the purpose of the statute by deterring prospective donors." *Id.* On the basis of its concerns and because "the possibility of extinguishment is relatively remote," NYLC stated it was "unnecessary" for Treasury "to provide for allocation of proceeds after extinguishment." *Id.*

NYLC also commented on whether the value of postdonation improvements to the easement property should be included or excluded from the proceeds formula in the regulation. *Id.* Specifically, NYLC stated that the regulation's structure "contemplates that a ratio of value of the conservation restriction to value of the fee will be fixed at the time of the donation and will remain in effect forever thereafter." *Id.* But, according to NYLC, the formula "fail[ed] to take into account that improvements may be made thereafter by the owner which should properly alter the ratio." *Id.* To support its concern, NYLC presented a mathematical example, based on a fact pattern in the proposed regulations, to show that requiring the prospective donor to turn over extinguishment proceeds "would obviously be undesirable to the prospective donor and would constitute a windfall to the donee organization." *Id.* at 1351. Thus, NYLC recommended that the proposed formula be revised to prevent inequities in the event Treasury retained the extinguishment provision, but NYLC "*strongly* recommend[ed] deletion of the entire extinguishment provision." *Id.* (alteration in original).

Although NYLC offered the most extensive comments on the proposed extinguishment provision, other commenters similarly expressed criticism or urged caution. *Id.* at 1345–46. For example, the Landmarks Preservation Council of Illinois "urge[d] caution in the treatment of the concept of 'extinguishment' in the regulations," as "[t]he discussion in the regulations of the conditions under which that binding agreement may be abrogated lends an undesirable air of legitimacy to the concept of 'extinguishment.'" *Id.* at 1346. It also cautioned that the regulations could create a disincentive to donate easements. *Id.*

The Land Trust Exchange cautioned that the regulations "may result in donors or donees having to pay real estate transfer taxes" and that it was "unnecessary." *Id.* The Trust for Public Land commented that it had "serious doubts whether the provision . . . could be enforced

against anyone other than the original donor of the easement" and that "the tax benefit rule is a satisfactory means of meeting any concern the IRS may have that a donor might receive the double benefit of an easement deduction followed by later recovery of the value donated." *Id.*

The Brandywine Conservancy averred that the proposed regulation "may unnecessarily restrict the amount, payable to the holder of an easement, if changes in surrounding territory have made the easement proportionately more valuable than the retained interest" and that "[t]he donee should be entitled to proceeds equal to the greater of its original proportionate value or its proportionate value at the time of the extinguishment." *Id.* And the Nature Conservancy and the Maine Coast Heritage Trust both stated that the regulation should be "clear" that the original proportionate value is the minimum that a donee will receive in extinguishment proceeds. *Id.*

After a public hearing, Treasury adopted the proposed regulations with revisions. T.D. 8069. In the preamble to the final rulemaking, Treasury stated that "[t]hese regulations provide necessary guidance to the public for compliance with the law and affect donors and donees of qualified conservation contributions" and that it had "consider[ed] . . . all comments regarding the proposed amendments." *Id.* In the subsequent "Summary of Comments" section, however, Treasury did not discuss or respond to the comments made by NYLC or the other six commenters concerning the extinguishment provision. *See id.*, 1986-1 C.B. at 90–91; *see also Hewitt v. Commissioner*, 21 F.4th at 1346; *Oakbrook I*, 154 T.C. at 188 ("The 'judicial extinguishment' provision is not among the amendments specifically addressed in the 'Summary of Comments.'"); *id.* at 239 (Holmes, J., dissenting) ("The Final Rule's statement of basis and purpose shows absolutely no mention of the extinguishment-proceeds clause at all . . . .").

Upon careful consideration of the Eleventh Circuit's analysis in *Hewitt* regarding the promulgation of the proceeds regulation, we are persuaded that Treasury's actions did not provide "an explanation [that] is clear enough that its 'path may reasonably be discerned.'" *Hewitt v. Commissioner*, 21 F.4th at 1349 (alteration in original) (quoting *Encino Motorcars*, 579 U.S. at 221). Treasury's action did not provide any insight on "what major issues of policy were ventilated . . . and why the agency reacted to them as it did" with respect to the proceeds regulation. *See id.* (quoting *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019)). Absent any explanation from Treasury on why the considerations raised by NYLC and other commentators should not have

been heeded, "[i]t is not the role of the courts to speculate on reasons that might have supported an agency's decision. '[W]e may not supply a reasoned basis for the agency's action that the agency itself has not given.'" *Encino Motorcars*, 579 U.S. at 224 (second alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

We agree with the Eleventh Circuit's conclusion that "NYLC's comment was significant and required a response by Treasury to satisfy the APA's procedural requirements." *Hewitt v. Commissioner*, 21 F.4th at 1351.[13] The record leaves no doubt that NYLC—and others—made comments "'that can be thought to challenge a fundamental premise'" underlying the proposed agency decision." *Carlson*, 938 F.3d at 344 (quoting *MCI WorldCom, Inc.*, 209 F.3d at 765); *Oakbrook I*, 154 T.C. at 243 (Holmes, J., dissenting) (describing significant comments as those that "identify a specific and objective issue created by the language of the proposed rule and give some explanation for why that language is troublesome"); *see also supra* pp. 16–18. The preamble to the proposed regulations explained that the proposed rules "reflect the major policy decisions made by the Congress." Prop. Treas. Reg. § 1.170A-13, 48 Fed. Reg. at 22940. But the NYLC comments essentially countered that the proposed proceeds regulation was contrary to those policy decisions and offered comments that, "if adopted, would require a change in an agency's proposed rule." *Home Box Off., Inc. v. FCC*, 567 F.2d 9, 35 n.58 (D.C. Cir. 1977).

NYLC stated that while Congress enacted the statute "to encourage the protection of [the] . . . environment through the donation of conservation restrictions," the proposed regulation "would thwart the purpose of the statute by deterring prospective donors." *Hewitt v. Commissioner*, 21 F.4th at 1345; *see also supra* p. 17.[14] NYLC noted that

---

[13] The Eleventh Circuit noted the possibility that in failing to respond to significant comments, Treasury "was simply following its historical position that the APA's procedural requirements did not apply to these types of regulations." *Hewitt v. Commissioner*, 21 F.4th at 1348 (quoting *Oakbrook I*, 154 T.C. at 222 (Toro, J., concurring in the result)). To the extent that position was operative in the promulgation of the proceeds regulation, the Eleventh Circuit and the majority opinion in *Oakbrook I* made clear that it was mistaken. *Hewitt v. Commissioner*, 21 F.4th at 1350; *Oakbrook I*, 154 T.C. at 190–91; *see also Oakbrook I*, 154 T.C. at 222 (Toro, J., concurring in the result).

[14] The dissenting opinion argues that NYLC's comment "suppos[ed] that the proceeds regulation might disincentivize the donation of easements that did not comply with the statute." *See* dissenting op. p. 37. As a result of the comment's

the regulation's structure "contemplates that a ratio of value of the conservation restriction to value of the fee will be fixed at the time of the donation and will remain in effect forever thereafter." *Hewitt v. Commissioner*, 21 F.4th at 1345; *see also supra* p. 17. But, according to NYLC, the formula "fail[ed] to take into account that improvements may be made thereafter by the owner which should properly alter the ratio." *Hewitt v. Commissioner*, 21 F.4th at 1345.

NYLC expressly tied its comments both to a specific rule included in the proposed regulations and to a specific fact pattern contemplated by the proposed regulations. *Hewitt v. Commissioner*, 21 F.4th at 1348 (citing *Oakbrook I*, 154 T.C. at 224 (Toro, J., concurring in the result)). Thus, NYLC explained why the regulation contained "problems of policy and practical application" and therefore "*strongly* recommend[ed] deletion of the entire extinguishment provision." *Id.* at 1345 (alteration in original); *see supra* pp. 16–17. We therefore follow the Eleventh Circuit and hold that those comments were both "relevant and significant," requiring a response. *Hewitt v. Commissioner*, 21 F.4th at 1351; *Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 468 (D.C. Cir. 1998); *accord Carlson*, 938 F.3d at 343–44.

---

purported concern about noncomplying donations, the dissent concludes that the comment, "did not 'challenge a fundamental premise' underlying the proposed regulation." *See* dissenting op. p. 37 (quoting *Carlson*, 938 F.3d at 344). This is a strawman. NYLC's comment never suggested that possible donations would not have to comply with the *statute's* requirement that easements be protected in perpetuity. NYLC made clear that its concern was pointed at Treasury's proposed interpretation of that requirement.

Moreover, we are not aware of any rule that requires commentators to address every conceivable Congressional purpose in an enactment. As an organization with experience in donations of conservation easements, NYLC understandably focused upon Congress's purpose in the Tax Treatment Extension Act of 1980 to "encourage the protection of [the] . . . environment through the donation of conservation restrictions." *See supra* p. 17. This purpose is elucidated by the statutory history.

Before 1976, there was no explicit statutory authority for deductions for contributions of partial interests. *See* Nancy A. McLaughlin, *Internal Revenue Code Section 170(h): National Perpetuity Standards for Federally Subsidized Conservation Easements*, 45 Real Prop. Tr. & Est. L.J. 473, 476 (2010). In just five years, Congressional policy changed dramatically to one that provides a permanent deduction for qualifying contributions of such property. *Compare* Tax Reform Act of 1976, Pub. L. No. 94-455, § 2124(e), 90 Stat. 1520, 1919, *with* Tax Treatment Extension Act of 1980, Pub. L. No. 96-541, § 6, 94 Stat. 3204, 3206. The significance of NYLC's comment is underscored by the backdrop of Congress's considerable policy shift over such a short period of time.

In *Oakbrook I* the opinion of the Court reasoned that Treasury "clearly considered" comments on the requirement that the donee receive a proportional share of the proceeds because Treasury "substantially revised the text of [the proceeds regulation] . . . in response to those comments." *Oakbrook I*, 154 T.C. at 192. But the regulatory text was changed only to re-articulate the formula by which the proceeds would be apportioned. *See Oakbrook II*, 28 F.4th at 707 (finding that Treasury's revisions to the regulation were only "editorial in nature" and "aimed at clarifying the rule, not altering its meaning."); *Oakbrook I*, 154 T.C. at 252 (Holmes, J., dissenting) (observing that the change to the regulatory text "has no obvious explanation other than to increase editorial clarity"). The regulatory text was not changed to delete the apportionment provision altogether, as NYLC had explicitly requested, or as suggested by commentors such as the Land Trust Exchange and the Trust for Public Land. They respectively found the regulation "unnecessary" and unlikely to be enforceable beyond the original easement donor. *See supra* pp. 17–18. Treasury offered no explanation for the restatement of the formula, nor did it address NYLC's concern about the operation of the proposed rule in the context of Treasury's own fact pattern. *Hewitt v. Commissioner*, 21 F.4th at 1351, 1353.

In *Oakbrook I*, 154 T.C. at 194, the opinion of this Court rejected the argument that Treasury did not comply with the APA because the preamble "did not discuss the 'basis and purpose' of the judicial extinguishment provision specifically." *See Hewitt v. Commissioner*, 21 F.4th at 1347. The majority opinion reasoned that "[e]ven where a regulation contains no statement of basis and purpose whatsoever, it may be upheld 'where the basis and purpose . . . [are] considered obvious.'" *Oakbrook I*, 154 T.C. at 194 (alteration in original) (quoting *Cal-Almond, Inc. v. USDA*, 14 F.3d 429, 443 (9th Cir. 1993)); *Hewitt v. Commissioner*, 21 F.4th at 1347–48. But as the Eleventh Circuit subsequently explained in *Hewitt*, "[b]asis and purpose statements must enable the reviewing court to see the objections and why the agency reacted to them as it did" and that agencies should rebut relevant comments. *Hewitt v. Commissioner*, 21 F.4th at 1350 (quoting *Lloyd Noland Hosp. & Clinic v. Heckler*, 762 F.2d 1561, 1566–67 (11th Cir. 1985)); *see also Home Box Off., Inc.*, 567 F.2d at 35–36 ("[A] dialogue is a two-way street: the opportunity to comment is meaningless unless the agency responds to significant points raised by the public." (footnote omitted)).

The Eleventh Circuit observed that the Court's majority opinion in *Oakbrook I* "concluded that '[t]he broad statements of purpose contained in the preambles to the final and proposed regulations, coupled with obvious inferences drawn from the regulations themselves, [were] more than adequate.'" *Hewitt v. Commissioner*, 21 F.4th at 1348 (quoting *Oakbrook I*, 154 T.C. at 194). But the Eleventh Circuit rejected that rationale. In addition to finding its analysis in *Lloyd Noland* to be "instructive," the Eleventh Circuit also cited *Encino Motorcars* for the proposition that "[t]he [agency's] conclusory statements do not suffice to explain its decision." *Id.* at 1350 (quoting *Encino Motorcars*, 579 U.S. at 224).[15]

In agreement with the Eleventh Circuit's reasoning in *Hewitt v. Commissioner*, 21 F.4th at 1350–53, we hold that Treasury Regulation § 1.170A-14(g)(6)(ii) is procedurally invalid under the APA because Treasury failed to respond to a significant comment. Accordingly, we set it aside.

III.    *The Deed's Satisfaction of the "Restriction (Granted in Perpetuity)" Requirement of Section 170(h)(2)(C) and the "Protected in Perpetuity" Requirement of Section 170(h)(5)*

Having concluded that the regulation is not valid and should not govern our decision, we instead evaluate the deed simply in light of the statute. The Supreme Court has told us that judicial inquiry begins with the statutory text and ends there as well if the text is unambiguous. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (first citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004); then citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); then citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); and then citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)). As set forth below, we find that the relevant text is clear and that the deed satisfies the requirement of "a restriction (granted in perpetuity)" under section 170(h)(2)(C) and the requirement that the conservation purpose be "protected in perpetuity" under section 170(h)(5)(A).

---

[15] We likewise agree with the Eleventh Circuit that the fact that Treasury stated that it had considered "all comments," without more discussion, does not "enable [us] to see [NYLC's] objections and why [Treasury] reacted to them as it did." *Hewitt v. Commissioner*, 21 F.4th at 1350 (quoting *Lloyd Noland*, 762 F.2d at 1566); *Carlson*, 938 F.3d at 344; *Oakbrook I*, 154 T.C. at 250–51 (Holmes, J., dissenting).

A.    *The Section 170(h)(2)(C) Requirements for a Restriction Granted in Perpetuity*

1.    *A Restriction*

Section 170(h)(2)(C) refers to "a restriction (granted in perpetuity) on the use which may be made of the real property." The Eleventh Circuit has found that a sufficient "restriction" exists if the deed in question "burdens what would otherwise be the landowner's fee-simple enjoyment of—and absolute discretion over—the use of its property." *Pine Mountain Pres., LLLP v. Commissioner*, 978 F.3d 1200, 1206 (11th Cir. 2020), *aff'g in part, rev'g in part, vacating and remanding* 151 T.C. 247 (2018).[16] Further, the Eleventh Circuit has found it "indisputable" that an easement imposes "a restriction" when it "broadly restrict[s] . . . preexisting development rights." *Id.*[17]

Adopting the construction set forth by the Eleventh Circuit, we conclude that the section 170(h)(2)(C) requirement for a "restriction" is met in the instant deed. Paragraph 1 declares that "[i]t is the purpose of this Easement to assure that the Property will be retained forever predominantly in its natural, scenic, and open space condition and to prevent any use of the Property that will significantly impair or interfere with the conservation values of the Property." Paragraph 1 further provides that "[g]rantor will not perform, nor knowingly allow others to perform, any act on or affecting the Property that is inconsistent with the purposes of this Easement." Paragraph 4 sets forth a nonexhaustive list of "[p]erpetually [p]rohibited [u]ses and [a]ctivities," which

---

[16] While we note that the Eleventh Circuit twice referred to section "170(b)(2)(C)" in its articulation and analysis of its holding, *see Pine Mountain Pres., LLLP v. Commissioner*, 978 F.3d at 1206, it is apparent from the statutory text and any quotes and references thereto that the reference to subsection "(b)" of section 170 is a typographical error. Accordingly, we will treat the two references to section "170(b)(2)(C)" as if made to section 170(h)(2)(C). *See Pine Mountain Pres., LLLP v. Commissioner*, 978 F.3d at 1206; *see also, e.g.*, *id.* at 1205 (referring to section 170(h)(2)(C) as the relevant provision).

[17] Other courts of appeals have also considered the application of section 170(h)(2)(C) and (5)(A). *See, e.g.*, *Oakbrook II*, 28 F.4th 700; *BC Ranch II, L.P. v. Commissioner*, 867 F.3d 547 (5th Cir. 2017), *vacating and remanding Bosque Canyon Ranch, L.P. v. Commissioner*, T.C. Memo. 2015-130; *Belk v. Commissioner*, 774 F.3d 221 (4th Cir. 2014), *aff'g* 140 T.C. 1 (2013); *Commissioner v. Simmons*, 646 F.3d 6, 10 (D.C. Cir. 2011), *aff'g* T.C. Memo. 2009-208. We find the Eleventh Circuit's discussion in *Pine Mountain* particularly instructive because the court considered issues similar to those we address here.

encompasses "[a]ny activity on or use of the Property inconsistent with the purpose of this Easement."

In addition, prohibited activities expressly enumerated in the deed include "[t]he right to establish or maintain any residential, commercial, recreational, or industrial facility on the Property or any other structure not specifically reserved herein" and "[s]urface mining or quarrying of soil, sand, or other minerals," except for "a permitted use of the Property in a manner consistent with the conservation purpose of this deed." In stating that the Easement's purpose is the retention of the Property's "natural, scenic, and open space condition" and "prevent[ion] [of] any use of the Property that [would] significantly impair or interfere with the conservation values of the Property," Valley Park is prohibited from engaging in any act inconsistent with the Easement's conservation purpose. And by providing a nonexhaustive list of "[p]erpetually [p]rohibited [u]ses and [a]ctivities," paragraphs 1 and 4 of the deed "burden[] what would otherwise be the landowner's fee-simple enjoyment of—and absolute discretion over—the use of its property." *Pine Mountain Pres., LLLP v. Commissioner*, 978 F.3d at 1206. Likewise, these terms of the deed broadly restrict Valley Park's preexisting development rights. *See id.*

Further, in *Pine Mountain Preserve*, the Eleventh Circuit found that "[a] broad limitation on the use of the property that applies to the parcel as a whole satisfies the statutory test, even if within that parcel there exist certain narrow exceptions to that limitation." *Id.*[18] We agree. The deed in the instant case passes muster because, as discussed above, it forbids the development and maintenance of "residential, commercial, recreational, or industrial" facilities and proscribes "surface mining or quarrying of soil, sand, or other minerals" on the entire Property. Accordingly, we conclude that the instant deed contains "[a] broad limitation on the use of the property that applies to the parcel as a whole" and, therefore, satisfies the statutory test. *Id.*

2. *Granted in Perpetuity*

a. *Express "in [P]erpetuity" Terms*

The "granted in perpetuity" requirement of section 170(h)(2)(C) is satisfied where "nothing in the grant envisions a reversion of the

---

[18] In his Motion in the instant case, respondent does not allege that the deed contains the type of "narrow exceptions," i.e., reserved rights, that were at issue in *Pine Mountain Preserve, LLLP v. Commissioner*, 978 F.3d at 1204.

easement interest to the landowner, its heirs, or assigns." *Pine Mountain Pres., LLLP v. Commissioner*, 978 F.3d at 1206. In so holding, the court of appeals relied on the common law meaning of "perpetuity" and found that the easements at issue imposed a restriction because "Pine Mountain, its heirs, or assigns remain indefinitely subject to the restriction and because nothing in the grants will cause the easements, either automatically or upon the happening of some event, to revert back to [the grantor] or its successors." *Id.* (citing Jon W. Bruce & James W. Ely, Jr., *The Law of Easements & Licenses in Land* § 10:1).

Again, we agree with the Eleventh Circuit's construction of the statutory text. *See id.* at 1208 ("In brief, we hold that § 170(h)(2)(C) means just what it says it means—that to qualify for a deduction, a conservation easement must grant 'a restriction' . . . 'in perpetuity,' as that term has traditionally been used and understood in common-law practice."); *see also Perpetuity*, *Random House Webster's College Dictionary* (2d ed. 2001) (defining "perpetuity" as "endless or indefinitely long duration or existence").[19] Applying that construction in the instant case, we similarly find that the deed grants a restriction in perpetuity, as required by section 170(h)(2)(C). The conveyance paragraph of the deed provides that Valley Park, "grants and conveys to [CLF] a conservation easement *in perpetuity* over the Property of the nature and character and to the extent hereinafter set forth." (Emphasis added.) Paragraph 1 states that the purpose of the Easement is to "assure that the Property will be *retained forever* predominantly in its natural, scenic, and open space condition and to prevent any use of the Property that will significantly impair or interfere with the conservation values of the Property." (Emphasis added.) Paragraph 1 continues by stating that "the duration of this Easement shall be in perpetuity." These provisions impose an affirmative obligation upon CLF, "in perpetuity," to maintain the Property in a manner consistent with its native condition. *See also Commissioner v. Simmons*, 646 F.3d at 10. Our review of the entire deed reveals nothing in the grant that "envisions a reversion of the easement interest to the landowner, its heirs, or assigns." *Pine Mountain Pres., LLLP v. Commissioner*, 978 F.3d at 1206. Thus, between the conveyance paragraph and the stated purpose of the

---

[19] We note that the Sixth Circuit has articulated a somewhat different view. *See Oakbrook II*, 28 F.4th at 706 ("[T]he donation of an easement will not qualify for a charitable deduction unless the taxpayer can guarantee that both the grant of the interest and the conservation goals which it serves will endure for quite a long time— forever, to be exact.").

easement in Paragraph 1, we conclude that the section 170(h)(2)(C) requirement of a grant "in perpetuity" is met.

### b. *"Prior [C]laims" Clause*

Respondent argues that the "prior claims" clause in paragraph 12 causes the deed to fail the perpetuity requirement of section 170(h)(2)(C). The relevant portion of paragraph 12 provides that in the event of a judicial extinguishment:

> [T]he amount of the proceeds to which Grantee [CLF] shall be entitled, after the satisfaction of prior claims, from any sale, exchange, or involuntary conversion of all or any portion of the Property subsequent to such termination or extinguishment, shall be determined by the court.

Though respondent seems to acknowledge that there were no claims against the subject property before the time of the execution of the deed, *see BC Ranch II, L.P. v. Commissioner*, 867 F.3d at 554 n.21 (noting that our perpetuity analysis should not concern itself with trifles), he posits that the word "prior" may include liabilities that "arise after the [d]eed was signed but before the date of extinguishment." Under respondent's reading of the prior claims clause, CLF's proceeds upon judicial extinguishment could be reduced to zero if an Oklahoma court prioritized claims that arise on the subject property between the date of the deed and judicial extinguishment, i.e., after the grant of the easement.[20] We find his interpretation implausible.

We have long recognized that a contract "is a proper subject of judicial interpretation as to its meaning, in the light of the language used and the circumstances surrounding its execution." *Robbins Tire & Rubber Co. v. Commissioner*, 52 T.C. 420, 435–36 (1969) (first citing *Colo. Milling & Elevator Co. v. Howbert*, 57 F.2d 769, 771 (10th Cir. 1932); and then citing *Big Diamond Mills Co. v. United States*, 51 F.2d 721, 724 (8th Cir. 1931)). Accordingly, we look to the text of the contract and the context in which it was executed to determine the proper meaning of its terms. *See, e.g.*, *McGivney v. Commissioner*, T.C. Memo. 2000-224, 2000 WL 1036364, at \*1 (applying principles of contract

---

[20] Respondent does not argue that "prior" means any claim that takes precedence over others. *See, e.g.*, *Prior*, *Black's Law Dictionary* (10th ed. 2016) (defining "prior" as "[t]aking precedence"). Rather, his argument is framed only in terms of chronological priority, i.e., the prospect of claims that arise *after* the grant of easement but that are "prior" to a later extinguishment.

construction to stipulations). Black's Law Dictionary defines "prior" as "[p]receding in time or order." *Prior*, *Black's Law Dictionary* (10th ed. 2016).[21] A straightforward reading of the text of paragraph 12 leads us to conclude that "prior" means any claim that preceded the date of the grant. *See Mitchell*, 138 T.C. at 332 (focusing on whether the requirements of section 170(h) were satisfied at the time of the easement's grant).[22]

Our interpretation of the text is confirmed by the context. *See Robbins Tire & Rubber Co.*, 52 T.C. at 436. The prior claims clause is in paragraph 12, which sets forth the terms for the division of proceeds in the event of judicial extinguishment. In that context, it is logical that the point of reference for the existence of claims that would be paid ahead of CLF's claim would be those in existence before the grant of the easement. Respondent does not dispute that there were no such claims. Moreover, respondent does not point us to any Oklahoma caselaw that holds that a prior claims clause, such as this one, would be read to apply to claims arising after the time of the grant. Therefore, in light of the deed's text and the context in which it was executed, we decline to adopt respondent's reading.

B. *The Section 170(h)(5)(A) Requirement that the Conservation Purpose be Protected in Perpetuity*

Section 170(h)(2)(C) and section 170(h)(5)(A) impose separate requirements. *See Pine Mountain Pres., LLLP v. Commissioner*, 978 F.3d at 1207; *see also Belk v. Commissioner*, 774 F.3d at 228. Building upon the section 170(h)(1) rule that a contribution is not qualified unless it is "exclusively for conservation purposes," section 170(h)(5)(A) provides that "[a] contribution shall not be treated as exclusively for

---

[21] At least two other sources—both published contemporaneously with the execution of the deed—confirm this definition. *Prior*, *American Heritage Dictionary of the English Language* (5th ed. 2016) (defining "prior" as "[p]receding in time or order"); *Prior*, *Webster's New World College Dictionary* (5th ed. 2016) (defining "prior" as "preceding in time; earlier; previous; former").

[22] Paragraph 22(b) of the deed also provides that "[a]ny general rule of construction to the contrary notwithstanding, this Easement shall be liberally construed in favor of the Grantee to affect the purpose of this Easement." Clause (b) continues, stating that "[i]f any provision in this instrument is found to be ambiguous, an interpretation consistent with the purpose of this Easement that would render the provision valid shall be favored over any interpretation that would render it invalid." Therefore, the terms of the deed itself provide additional support for adopting this interpretation.

conservation purposes unless the conservation purpose is protected in perpetuity."

### 1.    *Conservation Purpose*

Titled "[p]urpose," paragraph 1 of the deed provides that the purpose of the Easement is to "assure that the Property will be retained forever predominantly in its natural, scenic, and open space condition and to prevent any use of the Property that will significantly impair or interfere with the conservation values of the Property." *See, e.g.*, *Murphy v. Commissioner*, T.C. Memo. 2023-72, at \*43–47 (focusing on the conservation purposes stated in the deeds). Respondent's Motion does not argue that the deed lacks a conservation purpose.[23] Therefore, solely for the purpose of resolving the present Motions, we turn to the "protected in perpetuity" requirement.

### 2.    *Protected in Perpetuity*

The word "'perpetuity' [in section 170(h)(5)(A)]—as used in connection with conservation easements—draws on the term's common law meaning and denotes only that the granted property won't automatically revert to the grantor, his heirs, or assigns." *Pine Mountain Pres., LLLP v. Commissioner*, 978 F.3d at 1209. As we have discussed *supra* Part III.A.2, the conveyance paragraph and paragraph 1 here provide sufficient basis for us to conclude that the granted property will not automatically revert to the grantor or his heirs or assigns. Our review of the entire deed confirms the conclusion that "nothing in the grant envisions a reversion of the easement interest to the landowner, its heirs, or assigns." *Id.* at 1206.

Respondent argues that "the [d]eed statutorily fails to protect the conservation purposes in perpetuity" because it "does not require that the donee use any future proceeds consistent with the purposes of the

---

[23] Respondent "does not concede that Valley Park Ranch's claimed noncash charitable contribution meets any of the requirements of I.R.C. § 170 or the regulations promulgated thereunder which are not discussed herein. Accordingly, respondent specifically reserves the right, should this motion be denied, to advance any and all theories supporting the adjustment determined in the FPAA, including other components of the perpetuity requirement not argued in this motion." Resp't's Mot. for Summ. J. ¶ 6 (No. 9).

original contribution."[24] But the statute requires "only that the granted property won't automatically revert to the grantor, his heirs, or assigns." *Id.* at 1209. Under that interpretation, respondent's argument necessarily fails.[25] *Cf. Commissioner v. Simmons*, 646 F.3d at 10 (finding that a remote possibility that the donee might abandon an easement does not cause the easement to fail the perpetuity requirement in section 170(h)(5)(A)).

Respondent also argues that the prior claims clause of Paragraph 12 causes the deed to fail the section 170(h)(5)(A) "protected in perpetuity" requirement. His argument relies on his interpretation of the clause, which we have rejected. *See supra* pp. 26–27.

IV.   *Conclusion*

In conclusion, we will deny respondent's Motion (Doc. 9) and grant Mr. Oppenheimer's Motion (Doc. 16) as set forth herein. Following the Eleventh Circuit, we hold that the proceeds regulation is invalid under the APA. Moreover, we hold that the easement deed satisfies the "restriction (granted in perpetuity)" requirement of section 170(h)(2)(C) and the "protected in perpetuity" requirement of section 170(h)(5)(A).

---

[24] Because we hold that the proceeds regulation is invalid under the APA, *see supra* p. 22, respondent's arguments that rely upon it and caselaw that applied it, *see, e.g.*, *Coal Prop. Holdings, LLC*, 153 T.C. 126, are unavailing.

[25] We construe respondent's argument that the deed fails the protected-in-perpetuity requirement of section 170(h)(5)(A) because it "does not dictate what [CLF] . . . must do with any extinguishment or condemnation proceeds in the event [of judicial extinguishment]," *see* Resp't's Resp. to Order ¶ 28 (No. 39), to be a restatement of his argument that the deed "statutorily" fails because it "does not require that the donee use any future proceeds consistent with the purposes of the original contribution," *see* Resp't's Resp. to Mot. for Partial Summ. J. ¶ 56 (No. 25). We reject the restated argument for the same reasons we rejected its original formulation. *See supra* pp. 24–26. Respondent lodged the same argument based on Treasury Regulation § 1.170A-14(g)(6)(i). *See* Resp't's Resp. to Mot. for Partial Summ. J. (No. 25). Because we have analyzed and rejected the argument under the statute, we need not consider the regulation. *See also Whirlpool Fin. Corp. v. Commissioner*, 19 F.4th 944, 949 (6th Cir. 2021), *aff'g* 154 T.C. 142 (2020). But whether asserted under the statute or the regulation, the argument fails for the reasons we have stated. *See supra* pp. 24–26.

*An appropriate order will be issued.*

Reviewed by the Court.

FOLEY, URDA, TORO, GREAVES, MARSHALL, and WEILER, *JJ.*, agree with this opinion of the Court.

BUCH and COPELAND, *JJ.*, concur in the result.

KERRIGAN, NEGA, PUGH, and ASHFORD, *JJ.*, dissent.

BUCH, *J.*, concurring in the result: The Court, indeed the tax system at large, is currently faced with a flood of conservation easement cases. In 2022 it was reported that the Court had over 425 conservation easement cases. Aysha Bagchi, *Tax Court Pondering Three Options for Ballooning Easement Docket*, Daily Tax Rep. (BL) (Dec. 16, 2022). A year later that number ballooned to more than 750. *See* Armando Gomez & Roland Barral, *It's High Time to Clear Out the Tax Court's Easement Backlog*, 179 Tax Notes Fed. 251 (2023). And with the Commissioner's recent commitment to challenging conservation easements, that number will continue to increase.

We often write that the purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). Perhaps for this reason, the Commissioner often attempts to dispose of conservation easement cases by summary judgment. Some of those motions have been directed at whether the easement serves a conservation purpose. *See, e.g.*, *Village at Effingham, LLC v. Commissioner*, T.C. Memo. 2020-102, at *6–7 (finding conservation purpose not protected in perpetuity). Others have been directed at procedural missteps. *See, e.g.*, *Belair Woods, LLC v. Commissioner*, T.C. Memo. 2018-159, at *10 (finding that the taxpayer did not substantially comply with reporting requirements when it failed to disclose cost or adjusted basis). The Commissioner has even sought to disqualify easements due to mere foot faults. *See, e.g.*, *Bond v. Commissioner*, 100 T.C. 32, 42 (1993) (finding that the taxpayer substantially complied with reporting requirements notwithstanding omission of appraiser's qualifications). But it can be difficult to distinguish between a misstep and a foot fault.

Counterintuitively, disposing of issues by summary judgment can create uncertainty in the law and sometimes delay litigation. For example, *Belair Woods* and *Bond* are both well-reasoned cases. But when taken together, they do not lend certainty to when a taxpayer has or has not substantially complied with the reporting requirements for conservation easements. Another example is *Friedberg v. Commissioner*, T.C. Memo. 2011-238, 2011 Tax Ct. Memo LEXIS 234, *supplemented by* T.C. Memo. 2013-224. Initially we held on summary judgment that the taxpayer was not entitled to a charitable contribution deduction with respect to a facade easement because he did not submit a qualified appraisal. We based this conclusion on the unreliability of the appraisal method. *Friedberg*, 2011 Tax Ct. Memo LEXIS 234, at *40–45. Two years later we were called upon to revisit this conclusion

after the U.S. Court of Appeals for the Second Circuit held that an appraisal is sufficient if the appraiser's analysis is present, even if unconvincing.

Litigation over the proceeds regulation has likewise created uncertainty rather than clarity. In *Oakbrook* we found the regulation procedurally and substantively valid. *Oakbrook Land Holdings, LLC v. Commissioner* (*Oakbrook I*), 154 T.C. 180 (2020), *aff'd*, *Oakbrook Land Holdings, LLC v. Commissioner* (*Oakbrook II*), 28 F.4th 700 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 626 (2023). And our holding was affirmed by the U.S. Court of Appeals for the Sixth Circuit. *See Oakbrook II*, 28 F.4th 700. However, the U.S. Court of Appeals for the Eleventh Circuit has held the same regulation to be invalid. *See Hewitt v. Commissioner*, 21 F.4th 1336 (11th Cir. 2021), *rev'g and remanding* T.C. Memo. 2020-89. Although this conflict among the circuits led the taxpayer in *Oakbrook* to seek Supreme Court review, the Solicitor General opposed certiorari because *Oakbrook* could be affirmed on grounds other than the validity of a regulation. Brief for Respondent at 13, *Oakbrook Land Holdings, LLC v. Commissioner*, No. 22-323 (U.S. Dec. 7, 2022). Judge Toro likewise suggested that *Oakbrook I* could have been decided by our Court on other grounds, writing: "Since applying the text of the statute to the terms of the easement before us suffices to resolve the dispute before the Court, there is no need to address the much more difficult question of the validity of section 1.170A-14(g)(6), Income Tax Regs." *Oakbrook I*, 154 T.C. at 201 (Toro, J., concurring in the result).

The Solicitor General's observation in *Oakbrook* is equally apt here. Because there are alternative grounds to grant petitioner partial summary judgment, an opinion on the validity of the proceeds regulation is unnecessary to decide this case.[1] The deed at issue preserves the donee's interest in the property in the event of extinguishment. The deed provides that the easement

> can only be terminated or extinguished, whether in whole or in part, by judicial proceedings in a court of competent jurisdiction, and the amount of the proceeds to which [the donee] shall be entitled, after the satisfaction of prior claims, from any sale, exchange, or involuntary conversion of all or any portion of the Property subsequent to such termination or extinguishment, shall be determined by the

---

[1] In this regard I agree with Part I of Chief Judge Kerrigan's dissent.

> court, unless otherwise provided by State or Federal law at
> the time.

Federal law certainly includes federal tax law. And by preserving for the donee whatever amount is provided by federal law at the time, the drafters took into account the ever-shifting landscape of federal law as it relates to conservation easements. *But see Coal Prop. Holdings, LLC v. Commissioner*, 153 T.C. 126, 143–45 (2019) (finding that a saving clause is an impermissible condition subsequent). We need not reach the question of the validity of the proceeds regulation to decide this case.

COPELAND, *J.*, agrees with this opinion concurring in the result.

KERRIGAN, *C.J.*, dissenting: I disagree with the outcome in the opinion of the Court, which concludes that Treasury Regulation § 1.170A-14(g)(6)(ii), referred to as the "proceeds" regulation, is procedurally invalid under the Administrative Procedure Act (APA). The opinion of the Court relies upon the holding in *Hewitt v. Commissioner*, 21 F.4th 1336, 1353 (11th Cir. 2021), *rev'g and remanding* T.C. Memo. 2020-89, that the regulation establishing the values of a donor's and a donee's proportionate interests upon judicial extinguishment of a perpetual conservation easement for purposes of a charitable contribution deduction was arbitrary and capricious because it failed to comply with the APA's procedural requirements and, thus, was invalid.

The opinion of the Court follows the reasoning of the U.S. Court of Appeals for the Eleventh Circuit in *Hewitt* and rejects this Court's holding in *Oakbrook Land Holdings, LLC v. Commissioner* (*Oakbrook I*), 154 T.C. 180 (2020), *aff'd, Oakbrook Land Holdings, LLC v. Commissioner* (*Oakbrook II*), 28 F.4th 700 (6th Cir. 2022) (*Oakbrook II*), *cert. denied*, 143 S. Ct. 626 (2023), which upheld the substantive and procedural validity of the "proceeds" regulation. I joined the opinion of the Court in *Oakbrook I*, and I adhere to its reasoning and result.

I disagree with the opinion of the Court for three reasons. First, I do not think it necessary to decide the validity of Treasury Regulation § 1.170A-14(g)(6)(ii) to resolve the Cross-Motions for Partial Summary Judgment. Second, I supported the opinion of the Court in *Oakbrook I*, and I find no compelling reason to change my position. Third, the longstanding principle of stare decisis should be followed.

I. *Deed and Compliance Requirements*

The first question the Court should address is whether the deed of easement at issue *complies with* Treasury Regulation § 1.170A-14(g)(6)(ii). If it does, petitioner's Motion can be granted (and respondent's denied) without any need to consider the validity of the regulation.[1] Petitioner contends that the deed of easement does comply with the regulation or is at worst ambiguous. The opinion of the Court declines to address these contentions because "we hold that [the regulation] is procedurally invalid under the APA." *See* op. Ct. p. 11. Instead of invalidating a regulation, I think the preferred approach is to

---

[1] In this regard I agree with Judge Buch's concurrence in the result.

determine whether the deed complies or a trial is needed because the deed is ambiguous.

If the Court concludes that paragraph 12 of the deed is ambiguous, the appropriate course of action in my view would be to defer resolution of this issue to trial, at which documentary and testimonial evidence could be adduced to help resolve the ambiguity. Instead, the opinion of the Court invalidated the "proceeds" regulation.

II. *Validity of "Proceeds" Regulation*

In *Oakbrook I*, 154 T.C. at 195, we held that Treasury satisfied all the APA requirements. We considered whether the agency "articulate[d] a satisfactory explanation for its action," *id.* at 190 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)), and concluded that "[t]he broad statements of purpose contained in the preambles to the final and proposed regulations, coupled with obvious inferences drawn from the regulations themselves, are more than adequate to enable us to perform judicial review," *id.* at 194. Accordingly, we held that Treasury satisfied all the applicable APA requirements.

The U.S. Court of Appeals for the Sixth Circuit in *Oakbrook II* explained that pursuant to the APA, "[w]hat an agency must include in a concise general statement of basis and purpose is dictated by competing considerations." *Oakbrook II*, 28 F.4th at 711. The Sixth Circuit expounded that courts, on the one hand, must be able "to see what major issues of policy were ventilated by the informal proceedings and why the agency reacted to them as it did." *Id.* (quoting *Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1005 (6th Cir. 1995)). Courts need not do a laborious examination of the record, formulate in the first instance the significant issues faced by the agency, and articulate the rationale of their resolution. *Oakbrook II*, 28 F.4th at 711; *Auto. Parts & Accessories Ass'n v. Boyd*, 407 F.2d 330, 338 (D.C. Cir. 1968). Agencies operate with scarce time and limited resources. *Oakbrook II*, 28 F.4th at 711. For these reasons, the APA's concise general statement requirement is not meant to be onerous. *Id.*; *Nat'l Mining Ass'n v. Mine Safety & Health Admin.*, 512 F.3d 696, 700 (D.C. Cir. 2008).

The Sixth Circuit concluded that the basis and purpose of the donor's improvements' regulation are clear. *Oakbrook II*, 28 F.4th at 711. The Sixth Circuit further concluded that the comments the

taxpayer referenced did not raise significant concerns and that these comments did not necessitate Treasury to provide a response. *Id.* at 716.

As the Sixth Circuit observed, "[s]ignificance is difficult to measure in the abstract." *Id.* at 714. Rather, "assessing significance is context dependent and requires reading the comment in light of both the rulemaking of which it was a part and the statutory ends that the proposed rule is meant to serve." *Id.* As guidance for this inquiry the Sixth Circuit adopted the test articulated by the U.S. Court of Appeals for the D.C. Circuit: "[A]n agency must respond to comments 'that can be thought to challenge a fundamental premise' underlying the proposed agency decision." *Id.* (quoting *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019)). The opinion of the Court appears to accept the *Carlson* test as setting the appropriate standard for assessing whether comments are "significant" enough to demand an explicit response. *See* op. Ct. p. 19.

This brings us to the central question: Did the comments offered by 2 of the 90 commenters, suggesting that the extinguishment regulation "would thwart the [statutory] purpose" by disincentivizing the donation of conservation easements, "challenge a fundamental premise" underlying the proposed regulation? *Carlson*, 938 F.3d at 344 (quoting *MCI WorldCom, Inc. v. FCC*, 209 F.3d 760, 765 (D.C. Cir. 2000)). The opinion of the Court answers this question "yes." I would answer "no," for two major reasons.

First, *Oakbrook II* was decided after the Eleventh Circuit's decision in *Hewitt*. The Sixth Circuit found the reasoning in *Hewitt* to be unpersuasive. *Oakbrook II*, 28 F.4th at 717. The Sixth Circuit disagreed with the Eleventh Circuit's conclusion that the comments at issue raised significant concerns about possible deterrent effects that regulation could have on donations and that the goal of section 170 is to allow for deductions for the donation of conservation easements to encourage donation of such easements. *Id.*; *Hewitt v. Commissioner*, 21 F.4th at 1352. The Sixth Circuit concluded that this point overlooks Congress's requirement that an easement's conservation purpose must be "protected in perpetuity." *Oakbrook II*, 28 F.4th at 717; *see* § 170(h)(5)(A).

Second, the Sixth Circuit in *Oakbrook II* supplied the correct answer to the Eleventh Circuit's argument: "Although encouraging the donation of conservation easements is undeniably a goal of the statute, highlighting this point overlooks a crucial condition that Congress

demanded be met by donors seeking deductions: an easement's conservation purpose must be 'protected in perpetuity.'" *Oakbrook II*, 28 F.4th at 717. Stated differently, Congress's policy objective was not to encourage the donation of easements *regardless of their terms,* but to encourage the donation of easements *that satisfied the statutory perpetuity requirements.* By supposing that the proceeds regulation might disincentivize the donation of easements that did not comply with the statute, comments cited by the taxpayer did not "challenge a fundamental premise" underlying the proposed regulation. *Carlson*, 938 F.3d at 344.

In 21 cases between 2016 and 2021, this Court sustained the disallowance of charitable contribution deductions because the deeds of easement failed to comply with the proceeds regulation. This is not a case where Treasury failed to conduct a rulemaking, failed to hold a public hearing, or failed to solicit and consider comments. Treasury did all these things.

I agree with the Sixth Circuit in *Oakbrook II*, and I cannot overlook "Congress's decision to emphasize that a conservation easement's purpose be protected in perpetuity." *Oakbrook II*, 28 F.4th at 718. I see no reason to change my position that Treasury's lack of response to comments petitioner cited do not jeopardize the validity of the regulation. Furthermore, the Eleventh Circuit in *Hewitt* does not raise any new arguments that were not considered by this Court in *Oakbrook I*.

III.   *Stare Decisis*

The opinion of the Court does not follow the longstanding legal principle stare decisis. Stare decisis is "[t]he doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation." *Stare decisis*, *Black's Law Dictionary* (11th ed. 2019). Courts have repeatedly taken the position that "[s]*tare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). That "today's Court should stand by yesterday's decisions . . . is 'a foundation stone of the rule of law.'" *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015) (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014)).

Stare decisis also "reduces incentives for challenging settled precedents, saving parties and courts the expense of endless relitigation." *Id.* We generally adhere to our prior decisions, absent exceptional circumstance, because doing so "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne*, 501 U.S. at 827.

The Supreme Court views stare decisis as a "principle of policy" that balances several factors to decide whether the scales tip in favor of overruling precedent. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 362–63 (2010) (quoting *Helvering v. Hallock*, 309 U.S. 106, 119 (1940)). Among these factors are the "workability" of the standard, "the antiquity of the precedent, the reliance interests at stake, and of course whether the decision was well reasoned." *Montejo v. Louisiana*, 556 U.S. 778, 792–93 (2009).

"*Stare decisis* is not an inexorable command . . . ." *Payne*, 501 U.S. at 828. However, "any departure from the doctrine of stare decisis demands special justification." *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984). This "special justification" is over and above the belief "that the precedent was wrongly decided." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014). Assertions previously reviewed and rejected by the Court are not a "special justification." *Bay Mills Indian Cmty.*, 572 U.S. at 798–99.

The opinion of the Court gives the same statutory text a different interpretation that effectively overrules a prior case interpreting identical operative text, a course of action that basic principles of stare decisis wisely counsel us not to take. *See United States v. Home Concrete & Supply, LLC*, 566 U.S. 478, 483 (2012) (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008)). "[S]*tare decisis* in respect to statutory interpretation has 'special force,' for 'Congress remains free to alter what we have done." *John R. Sand & Gravel Co.*, 552 U.S. at 139 (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 172–73 (1989)).

The principle of stare decisis dates back to the Federalist Papers. Alexander Hamilton stated that "strict rules and precedents" help "[t]o avoid an arbitrary discretion in the courts." The Federalist No. 78 (Alexander Hamilton). Professor Kozel explains that the Supreme Court generally requires some "special justification" to overcome stare

decisis. Randy J. Kozel, *Special Justifications: Settled Versus Right: A Theory of Precedent*, 33 Const. Comment 471, 475 (2018).

> Under this approach, a precedent is subject to overruling if it is obviously wrong, but not if it is a close call. The special justification is the presence of a clear error as compared with a less egregious mistake. Mere disagreement with a precedent is not enough to overrule it. But a decision that is *clearly* erroneous contains its own basis for departure.

*Id.*

The Supreme Court examines multiple factors in determining a special justification, including the "traditional" ones: (1) whether the statutory and doctrinal underpinnings of the existing caselaw have eroded over time, either through growth of judicial doctrine or Congressional action; and (2) whether the existing caselaw has proved unworkable. *Kimble*, 576 U.S. at 458–59. The "lesson is that every successful proponent of overruling precedent has borne the heavy burden of persuading the Court that changes in society or in the law dictate that the values served by *stare decisis* yield in favor of a greater objective." *Vasquez v. Hillery*, 474 U.S. 254, 266 (1986). The Supreme Court has also considered, as special justification, whether the prior decision rests on underlying facts that have changed, have come to be seen differently, or were mistaken from the outset. *Kimble*, 576 U.S. at 460. None of the justifications applies to this case.

I am concerned that the Court's reversing a prior position taken only four years ago and without compelling new legal argument will result in instability of the law in the area of conservation easements. Additionally, the opinion of the Court may result in challenges to regulations that have been relied upon for over 40 years. I reiterate here what I stated in my concurrence to *3M* about "creat[ing] a slippery slope whereby courts would be constantly faced with determining whether comments are significant and whether the agency responded appropriately to them." *3M Co. & Subs. v. Commissioner*, No. 5816-13, 160 T.C., slip op. at 280 (Feb. 9, 2023) (Kerrigan, C.J., concurring).

For the above-stated reasons, I cannot agree with the opinion of the Court.

NEGA, PUGH, and ASHFORD, *JJ.*, agree with this dissent.